PEOPLE v JACKSON

Docket No. 88782. Submitted February 12, 1987, at Detroit. Decided March 22, 1988.

Henry Jackson, Jr., was convicted by a jury in Detroit Recorder's Court of manslaughter and possession of a firearm during the commission of a felony, John P. O'Brien, J. Defendant appealed, claiming that the trial court erred when instructing the jury on the definition of reasonable doubt by failing to incorporate in its instruction the "moral certainty" language found in CJI 3:1:04 and 3:1:05.

The Court of Appeals held:

The trial court correctly conveyed to the jury that reasonable doubt is an honest doubt based upon reason by characterizing reasonable doubt as a doubt that is founded in reason, that arises from the evidence or from a lack thereof and that is not based on a "funny feeling" in the pit of the stomach or on sympathy, prejudice or bias. Moreover, the instruction did not have the effect of shifting the burden of proof by requiring the jurors to have a reason to doubt defendant's guilt.

Affirmed.

1. CRIMINAL LAW — JURY INSTRUCTIONS — REASONABLE DOUBT — APPEAL.

A failure to incorporate the "moral certainty" language of the Criminal Jury Instructions in an instruction defining reasonable doubt does not, by itself, constitute an error requiring reversal; however, the instruction given, when read in its entirety, must leave no doubt in the mind of the reviewing court that the jury understood the burden which was placed upon the prosecution and what constituted a reasonable doubt (CJI 3:1:04 and 3:1:05).

2. CRIMINAL LAW — JURY INSTRUCTIONS — REASONABLE DOUBT.

An instruction defining reasonable doubt may not shift the burden of proof by requiring the jurors to have a reason to doubt

REFERENCES

Am Jur 2d, Trial §§ 756, 785.

See the annotations in the Index to Annotations under Degree and Standard of Proof and Instructions to Jury.

the defendant's guilt; rather, the instruction must convey to the jurors that a reasonable doubt is an honest doubt based upon reason.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, *Timothy A. Baughman,* Chief of the Criminal Division, Research, Training and Appeals, and *Kim D. Johnson,* Assistant Prosecuting Attorney, for the people.

*Alvin C. Sallen,* for defendant on appeal.

Before: Danhof, C.J., and Weaver and J. M. Batzer,* JJ.

Per Curiam. A Detroit Recorder's Court jury convicted defendant of manslaughter, MCL 750.321; MSA 28.553, and possession of a firearm during the commission of a felony, MCL 750.227b; MSA 28.424(2). Defendant received consecutive sentences of two years' imprisonment on the felony-firearm conviction and five to fifteen years' imprisonment on the manslaughter conviction. Defendant appeals as of right.

The sole issue on appeal is whether the trial court correctly instructed the jury as to the definition of reasonable doubt. We believe it did.

Defendant's conviction arose out of the stabbing death of "Lucky" Barton. John Holloway, the prosecution's chief witness, testified that on the morning of November 22, 1984, he was present in an after-hours bar in Detroit. Defendant and Barton also were present. According to Holloway, defendant and Barton began to argue. During this argument, defendant pulled a pistol on Barton. Holloway also observed a knife lying on a nearby pool table.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

As the argument intensified, Holloway secreted himself in the bar's restroom. While in hiding, he heard defendant order Barton to drop to his knees and apologize. He then heard two gunshots. Unable to escape by way of a restroom window, Holloway reentered the main bar where he observed defendant and Barton fighting. Barton was bleeding from both legs. Holloway fled. As he exited from the bar, he observed Barton holding a chair as a shield and defendant holding a knife. The two were moving towards the bar's kitchen.

While Holloway was next door summoning an ambulance, he observed defendant leave the bar with the knife. He returned to the bar moments later and found Barton lying in a pool of blood on the kitchen floor. He then left the bar a second time and again summoned an ambulance. On his return, he discovered Barton lying outside, in the rear of the bar, bleeding profusely from multiple wounds.

An autopsy revealed that Barton died as a result of a stab wound to the right chest which penetrated the liver, causing massive blood loss. It further revealed that Barton had suffered gunshot wounds in each leg above the knee and multiple stab wounds about the body. Defendant admitted shooting Barton, but denied any involvement in the stabbings.

On appeal, defendant argues that the trial court's instruction to the jury defining reasonable doubt was fatally flawed because it failed to incorporate the "moral certainty" language of CJI 3:1:04 and CJI 3:1:05.[1] The failure to incorporate such language in an instruction defining reason-

---

[1] CJI 3:1:04 provides:

A reasonable doubt is a fair, honest doubt growing out of the evidence or lack of evidence in this case or growing out of any reasonable or legitimate inferences drawn from the evidence or

able doubt does not, by itself, constitute an error warranting reversal. To pass scrutiny, the instruction, when read in its entirety, must leave no doubt in the mind of the reviewing court that the jury understood the burden which was placed upon the prosecution and what constituted a reasonable doubt. *People v Powers,* 203 Mich 40, 45; 168 NW 938 (1918).

An instruction defining reasonable doubt may not shift the burden of proof by requiring the jurors to have a reason to doubt the defendant's guilt. Rather, the instruction must convey to the jurors that a reasonable doubt is an honest doubt based upon reason. *People v Nickson,* 120 Mich App 681, 688; 327 NW2d 333 (1982). It is a state of mind that would cause the jurors to hesitate when acting in the graver and more important affairs of life. *People v Bradford,* 10 Mich App 696, 708; 160 NW2d 373 (1968), lv den 381 Mich 778 (1968), cert den 394 US 1022; 89 S Ct 1638; 23 L Ed 2d 48 (1969); *Nickson, supra.*

---

lack of evidence. It is not merely an imaginary doubt or a flimsy, fanciful doubt or a doubt based upon the mere possibility of the innocence of the defendant or a doubt based upon sympathy, but rather it is a fair, honest doubt based upon reason and common sense. It is a state of mind which would cause you to hesitate in making an important decision in your own personal life. By stating that the prosecution must prove guilt beyond a reasonable doubt, I mean there must be such evidence that causes you to have a firm conviction to a moral certainty of the truth of the charge here made against this defendant.

CJI 3:1:05 provides:

A reasonable doubt is a fair doubt growing out of the testimony, the lack of testimony or the unsatisfactory nature of the testimony in the case. It is not a mere imaginary or possible doubt, but a fair doubt based on reason and common sense. It is such a doubt as to leave your minds, after a careful examination of all the evidence in the case, in the condition that you cannot say you have an abiding conviction to a moral certainty of the truth of the charge here made against the defendant.

In the instant case, the trial court characterized reasonable doubt as a doubt that is founded in reason, that arises from the evidence or from a lack thereof and that is not based on a "funny feeling" in the pit of the stomach or on sympathy, prejudice or bias. This instruction correctly conveyed to the jury that reasonable doubt is an honest doubt based upon reason. Moreover, it did not have the effect of shifting the burden of proof by requiring the jurors to have a reason to doubt defendant's guilt. Rather, it required the jurors to have a reason to doubt defendant's innocence. As the trial court stated: "What I am telling you is that the proofs presented by the people must eliminate any doubt based on reason, any doubt which would have a rational explanation."

When the instruction is read in its entirety, we do not doubt that the jury understood the prosecution's burden and what constituted a reasonable doubt. Accordingly, we affirm.